IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DOUGLAS JAMES WULZ,

                Plaintiff,              OPINION AND ORDER

v.

                                         20-cv-390-wmc

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Douglas James Wulz seeks judicial review of the Social Security Commissioner's final determination, which upheld the opinion of Administrative Law Judge ("ALJ") Ahavaha Pyrtel that Wulz was not disabled. On appeal to this court, plaintiff maintains that the ALJ erred in three core respects: (1) by finding that Wulz could perform his past relevant work without taking into account his nonsevere mental health impairments; (2) by not addressing Wulz's migraines under Listing 11.02; and (3) by failing to build a logical bridge between the evidence and his determination that Wulz needed a sit/stand option. For the reasons that follow, the court will affirm the Commissioner's final determination.

BACKGROUND[1]

**A. Overview**

Plaintiff Douglas James Wulz has a master's degree in management and organizational behavior, served in the military until his retirement in 2008, and has past

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #8.

work experience as a financial systems specialist and a system analyst. Wulz has not engaged in substantial gainful activity since June 1, 2017, the same date as the alleged onset of disability. While Wulz applied for social security disability benefits on October 26, 2018, his date last insured was June 30, 2018. As a result, plaintiff's claim for coverage spans a total of roughly 13 months from June 1, 2017, to June 30, 2018.

With a birth date of February 6, 1964, Wulz was 53 years-old at his alleged disability onset, which is defined as an individual "closely approaching advanced age." 20 C.F.R. § 404.1563. In his application, Wulz specifically claimed disability based on arthrosis of his lumbar spine with disc degeneration and radiculopathy; sleep apnea; upper airway restrictive syndrome; ocular migraines; anxiety; disc disease of the cervical spine; hip osteoarthritis, bursitis, labral tears (right) and impingement; lymphocytic colitis; reactive airways disease / asthma; bilateral pes planus with plantar fasciitis. (AR 72.)

### B. ALJ Decision

ALJ Pyrtel held a hearing on November 14, 2019, at which Wulz appeared both personally and by counsel. On December 5, 2019, the ALJ issued an opinion finding that Wulz had not been under a disability within the meaning of the Social Security Act from his onset date of June 1, 2017, through his date last insured of June 30, 2018. The ALJ first determined that Wulz had the following severe impairments: "migraines/headache, degenerative disc disease, obesity, Achilles tendinitis, plantar fasciitis, right rotator cuff tear, asthma, and hip osteoarthritis." (AR 21.) At the same time, the ALJ concluded that a number of plaintiff's other impairments, including anxiety, were not severe, although he does not challenge those determinations on appeal. (AR 21-23.) The ALJ further found

that Wulz had no impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 23.) In this section of the decision, the ALJ did not expressly consider whether plaintiff's headaches and/or migraines met or medically equaled Listing 11.02, which generally applies to seizures, but has been applied to "migraines [that] occur with the same debilitating frequency of epileptic seizures." *Snow v. Berryhill*, No. 3:18-CV-434 JD, 2019 WL 1873551, at *3-4 (N.D. Ind. Apr. 26, 2019). Even so, the ALJ did consider the evidence of headaches and migraines later in her opinion at step 4, as discussed below.

Ultimately, the ALJ found that Wulz had the residual functional capacity ("RFC") to perform sedentary work with additional, exertional restrictions, including having "a sit/stand option that allowed him to alternate between sitting for 30 minutes and standing for 5 minutes at a time" and limits on various environmental exposures. (AR 23.) In formulating the RFC, the ALJ also expressly considered Wulz's reports about (1) his ability to stand, walk and sit without changing positions, and (2) the length of time he could sit, stand and walk in an 8-hour workday. (AR 24.) The ALJ further considered his complaints of neck, hip, shoulder, ankle and foot pain, as well as his reports of "occasional ocular migraines." (*Id.*) Next, the ALJ reviewed the medical record, considering the evidence with respect to each severe impairment.

With respect to the treatment of his migraines and headaches, the ALJ explained that the "record indicates that the claimant suffered an ocular migraine with associated vision problems in November 2017," but his "neurologic exam at that time was normal, and a brain MRI did not show any acute findings." (AR 27.) The ALJ also considered that

3

the record did not support a finding that he experienced any, additional episodes of ocular migraines; rather, he complained of less intense headaches on a daily basis, at least for some period of time. The ALJ further considered a medical note dated July 31, 2019, by his treating physician, Dr. Mon L. Yee, M.D., which reported that "while [Wulz] continues to experience intermittent headaches, he was able to function through them." (AR 27 (citing Ex. 9F, p.10 (AR 774)).) Based on this record, therefore, the ALJ concluded "that the claimant's very sporadic ocular migraines and his more frequent headaches would not have prevented him from working during the period at issue, particularly in light of the environmental limitations incorporated herein." (AR 27.)

With respect to the sit/stand option, the ALJ "recognize[d] that the claimant reported significant pain when he had to sit for extended periods," but considered an October 28, 2019, report by his employer at Waunakee High School, who stated that Wulz "was allowed to sit, stand, walk and use a golf cart as needed in performance of his coaching duties." (AR 28.) The latter report led the ALJ to find that the sit/stand option in the RFC, coupled with additional exertional limitations, would address his impairments and symptoms during the relevant 13 month period at issue.

As part of this section, the ALJ also considered the opinion testimony of Dr. Yee, who completed a November 16, 2019, assessment as plaintiff's treating physician, indicating that Wulz "could only sit for 15 minutes and stand for five minutes at time, [and] he could sit and stand/walk for less than two hours each in an eight-hour workday." (AR 28.) Dr. Yee further opined that Wulz "would be absent more than three times per month as a result of his impairments or treatment." (*Id.*) However, the ALJ discounted

4

these opinions, ultimately finding the limitations on sitting, standing and accommodating work absences unpersuasive because: (1) Dr. Yee did not indicate that the restrictions pertaining to his physical limitations applied during the relevant period for purposes of assessing his disability claim; (2) the "extreme sitting, standing, and walking limitations" are not consistent with the "great weight of evidence"; and (3) the limitations are "inconsistent with the claimant's ability to perform his activities of daily living independently, as well as work on a part-time basis." (AR 28.) The ALJ also rejected Dr. Yee's opinion that Wulz would be absent multiple days a month, finding no support in the record for this conclusion, "particularly in light of his largely normal examinations and self-reported ability to manage his pain and function without more aggressive treatment options." (AR 28.)

Instead, the ALJ found "more persuasive" the opinions of the two, original state agency medical consultants, as well as the opinion of Judy Braiser, D.O., upon reconsideration. Still, the ALJ acknowledged Wulz's "need for additional postural limitations" consistent with Braiser's findings. (AR 29.) Relying on these opinions, coupled with Wulz's "testimony regarding his pain with walking and his difficulty remaining in one position for extended periods, the ALJ concluded that he was limited to sedentary-exertion work with a sit-stand option." (AR 29.) Accordingly, the ALJ found that plaintiff could have performed his past work as a financial systems specialist and systems analyst during the relevant period, which the vocational expert opined were both sedentary and skilled jobs, identified as SVP 8 and SVP 7, respectively under the Social

5

Security regulations. (AR 30.) As such, the ALJ concluded that Wulz was not disabled from June 1, 2017, through June 30, 2018.

### C. Additional Medical Records

In his opening brief, plaintiff also sets forth various medical records dating from July 12, 2017, through October 10, 2019, which cover his right heel pain, plantar fasciitis, ocular migraines, hip pain, including a small labral tear, lumbar pain, chronic neck pain, tinnitus, and inflamed Achilles tendon. (Pl.'s Opening Br. (dkt. #13) 6-10.) The court addresses these records where relevant below.

## OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Specifically, findings of fact are "conclusive," so long as they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Provided the Commissioner's findings under § 405(g) are supported by such "substantial evidence," this court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Similarly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Thus, plaintiff's three core challenges on appeal must be considered under this deferential standard, which the court will address in turn.

I. **Consideration of Nonsevere Mental Impairments**

As plaintiff explains in his opening brief, but for the ALJ's finding that Wulz could still perform his past relevant work, he would have qualified for benefits under Rule 201.14, given his age and limitation to sedentary work. 20 C.F.R. Part 404, Subpart 4, Appendix 1. Understandably, therefore, plaintiff begins by challenging the ALJ's finding that Wulz could perform his past work, arguing that she failed to consider his mental impairments -- specifically, his anxiety -- in light of the skill level demanded for either of the identified jobs.

To begin, plaintiff acknowledges -- and does not challenge -- the ALJ finding that his anxiety was not a severe impairment. Nonetheless, he argues that the ALJ was required to *consider* this anxiety in crafting his residual functional capacity ("RFC"), which in turn could have a possible impact on Wulz's ability to perform his past relevant work. In support, Wulz directs the court to *Villano v. Astrue*, 556 F.3d 558 (7th Cir. 2009), in which the Seventh Circuit explained that "[i]n determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Id.* at 563 (citing S.S.R. 96–8p; *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)). In

7

finding that Wulz's anxiety was not severe, however, the ALJ cited several bases, including that he "does not appear" to have been "diagnosed with anxiety by an acceptable medical source during the period at issue." (AR 22-23.) And just as the Social Security regulations provide "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source," 20 C.F.R. § 404.1521, the Seventh Circuit's requirement in *Villano* to consider nonsevere impairments in crafting an RFC only applies to "medically determinable impairments." 556 F.3d at 563.

Thus, while plaintiff contends in his opening brief that "both Dr. Anne Weiss and Dr. Gary Griglione noted Wulz's diagnosis for anxiety during the relevant period and treated Wulz for it. R523, 501" (Pl.'s Opening Br. (dkt. #13) 14), the Commissioner points out in his opposition brief that neither of these doctors diagnosed or treated Wulz for anxiety. Dr. Weiss simply noted that plaintiff *reported* "some anxiety" (AR 523) and Dr. Griglione merely listed anxiety as one of several diagnoses in plaintiff's *past* medical history. (AR 501.)

Perhaps recognizing this shortfall, plaintiff for the first time notes in his reply brief that Nathaniel Stepp, D.O., *had* diagnosed Wulz with anxiety and depression, prescribing him medication throughout the relevant period. (Pl.'s Reply (dkt. #15) 7 (citing AR 533, 540, 620, 718).) Putting aside the issue whether plaintiff can raise this argument for the first time in reply, the pages that plaintiff cites from the record make *no* reference to Dr. Stepp, nor to any diagnosis of anxiety or depression, much less ongoing treatment for those conditions. To the contrary, the records describe the results of a colon biopsy (AR 533), an introductory page to records from Dr. Yee (AR 544), a health summary of plaintiff's

8

foot conditions (AR 620), and a podiatry note from Christopher A. Daniele, M.D. (AR 718).  On this record, therefore, the court cannot conclude that plaintiff's anxiety was a medically determinable impairment, nor that it triggered any obligation on the part of the ALJ to consider anxiety for purposes of crafting Wulz's RFC.

Moreover, even if plaintiff had satisfied this threshold requirement, he stops short of explaining (1) how his anxiety manifests itself in terms of limitations in understanding, remembering or applying information, concentration persistence and pace, or in some other way, or (2) what additional nonexertional limitations the ALJ should have included in his RFC.  See Jozefyk v. Berryhill, 923 F.3d 492, 498 (7th Cir. 2019) (finding any error harmless where it was "unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none").  More importantly, plaintiff wholly fails to point to any medical evidence or opinion that would compel the ALJ to find such a limitation.  On this record, the ALJ adequately explained her reasons for rejecting anxiety as a medically determinable impairment, and certainly did not err by failing to account for it further in crafting Wulz's RFC.  As such, the court rejects this basis for remand.

## II. Treatment of Migraines under Listing 11.02

Next, plaintiff faults the ALJ for failing to consider whether Wulz's migraines met or medically equaled Listing 11.02.  While no specific listing exists for migraines, plaintiff correctly notes that the Commissioner "'routinely considers [this] impairment [] under the criteria for the Listing [for epilepsy], which is now 11.02." Horner v. Berryhill, No. 17 C 7586, 2018 WL 3920660, at *2 n.1 (N.D. Ill. Aug. 16, 2018) (quoting Cooper v. Berryhill,

9

244 F. Supp. 3d 824, 828 (S.D. Ind. 2017)). "A claimant may therefore demonstrate equivalence to Listing [11.02] by showing that his migraines cause functional impairments equivalent to those described in the Listing." *Horner*, 2018 WL 3920660, at *2 n.1 (quoting *Cooper*, 244 F. Supp. 3d at 828-29). Thus, under Listing 11.02B, if the claimant suffers from "more than one medically severe migraine headache per week despite at least three months of prescribed treatment," the Listing is medically equaled. *Kwitschau v. Colvin*, No. 11 C 6900, 2013 WL 6049072, at *3 (N.D. Ill. Nov. 14, 2013). However, the record before this court again fails to support such a disability here.

As an initial matter, plaintiff argues that the ALJ erred by failing to discuss Wulz's migraines at step 3 in the context of evaluating whether any listings apply, but instead discussing her findings with respect to plaintiff's headaches and migraines at step 4 in the context of explaining his RFC. This argument fails to even launch since, as the Commissioner points out in his opposition brief, the Seventh Circuit has repeatedly held that "when an ALJ explains how the evidence reveals a claimant's functional capacity, that discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing." *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020); *see also McCrossen v. Berryhill*, No. 18-CV-415-JDP, 2018 WL 6704748, at *1 (W.D. Wis. Dec. 20, 2018) (rejecting argument that the discussion of an impairment in the RFC section cannot be considered for purposes of determining whether the ALJ adequately explained why a listing is not satisfied).

Regardless, as explained above, the ALJ considered Wulz's testimony about headaches and reviewed the medical record without finding that he experienced *migraines*

10

-- as opposed to more benign headaches. To the contrary, the ALJ concluded that the "record indicates that the claimant suffered an ocular migraine with associated vision problems in November 2017," but there was no basis for finding additional episodes of ocular migraines. (AR 27.) While the record reflects that Wulz complained of less intense headaches on a daily basis, he specifically informed his treating physician, Dr. Yee, that he was able to function with them. (AR 774.)[2] Indeed, at the hearing, Wulz testified as follows:

> I would say that my migraine headaches are a daily occurrence.
> Well, I can't say that it's a migraine everyday. I can say that
> it's headaches everyday. Migraines more infrequently.

(AR 52.) On this record, therefore, the court can find neither that Wulz demonstrated that the frequency of his migraines satisfies the requirement under Listing 11.02B, nor that the ALJ erred in failing to explain further her reasoning for finding that Wulz suffered from migraines infrequently.

### III. Explanation for Sit/Stand Option

Finally, plaintiff argues that the ALJ erred in failing to provide an adequate explanation -- and more specifically, one relying on a medical opinion -- for her addition of a sit/stand option as part of Wulz's RFC. Plaintiff does not explain how this argument actually advances his appeal, other than perhaps by suggesting that the ALJ should have provided Wulz with a sit/stand/lay-down option, or perhaps should have adopted the

---

[2] This distinction between headaches and migraines is material because only "those headaches [that] produce symptoms that [were] medically equivalent to that which attend dyscognitive seizures" satisfy the Listing. *Jozefyk v. Saul*, No. 19-CV-1606, 2020 WL 5876063, at *3 (E.D. Wis. Oct. 2, 2020).

limitations set forth in Dr. Yee's November 2019 assessment. Even putting that aside, the ALJ adequately explained her reasons for limiting Wulz to sedentary work, as opposed to the light work restriction recommended by the state agency medical consultants, and for the addition of nonexertional limitations, including the challenged sit/stand option, while at the same time rejecting what she deemed to be "extreme limitations" called for by Dr. Yee.

Plaintiff appears to argue that the ALJ's RFC *must match* at least one medical expert's opinion, but cites no case law in support. Rather, here, the ALJ weighed Wulz's own assessment of his pain and functioning, as appropriately discounted by the fact that he had declined physical therapy and injections at times, and by his own testimony that he was able to walk up to two miles at a time and to perform household chores, including mowing the lawn and shoveling snow. (AR 25.) The ALJ also appropriately considered Wulz's specific statements about the length of the time he could sit without needed to stand to relieve pain in formulating a sit/stand limitation. While perhaps Wulz is arguing that the ALJ disregarded his testimony about needing to lay down to relieve pain, as the Commissioner points out in her opposition, the ALJ adequately explained why she found Wulz's hip pain not as limiting as he alleged. (AR 25, 330.)

Relatedly, plaintiff faults the ALJ for not adopting, or at least placing more weight on, Dr. Yee's November 2019 assessment. In light of the new regulations concerning the evaluation of medical opinion evidence, an ALJ is directed to focus on the persuasiveness of a medical opinion based on supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a)-(c). Here, the ALJ considered

the supportability and consistency of Dr. Yee's opinion as a treating, albeit general, physician -- the required factors under the regulation. 20 C.F.R. § 404.1520c. Specifically, the ALJ explained that Dr. Yee failed to indicate in his November 2019 form that his assessment reflects Wulz's physical condition during the relevant period, having been completed 17 months after Wulz's last-insured date, and she also found the opinion unpersuasive because the limitations suggested were inconsistent with the other medical evidence in the record *and* plaintiff's own testimony about his ability to perform activities. (AR 28.) As such, the court must reject this asserted ground for remand as well.

## ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, denying plaintiff Douglas J. Wulz's application for disability insurance benefits is AFFIRMED.

Entered this 8th day of March, 2021.

                              BY THE COURT:

                              /s/

                              _____
                              WILLIAM M. CONLEY
                              District Judge